Alright, our next case is 25-1068, Navigators Insurance Company v. Under Armour. We'll hear from Mr. Simpson. Thank you, Your Honor. May it please the Court, Richard Simpson, I represent Continental Casualty Company and for purposes of the argument today, the other insurance company appellants. This case is critically important to the directors and officers' liability insurance industry. It's a lot of money at stake, it's $100 million, but it's even more important as a precedent. The insurers under the 2016-2017 policy, many of whom overlap with the 17-18 policy, paid out their full $100 million and no one's trying to get that back. The way in which the underlying matters played out here is typical, stereotypical, of how securities litigation usually plays out. Anyone involved in those kinds of cases would say, I've seen this movie before. There's a class action lawsuit filed and then quickly after some disclosure is made, over the course of time, as more information becomes available, amended complaints are filed, derivative demands and complaints are filed, and in many cases, there's also a government investigation. This case played out exactly that way. The way in which directors' and officers' liability insurance works is to cabin a known risk, a known claim situation like this within the jurisdiction. But that's the whole question, right, is the breadth of the claim, the breadth of the risk. And so I appreciate, quite frankly, what you're saying, that this has effects beyond this case. I mean, that's the way a lot of appellate opinions work, but I don't disagree with that. But it still comes down to this question, it seems like, of whether the SEC-related investigation is a single claim that's considered part of the shareholder claims. And one's more about, at least generally, more about statements to the public. One's more an insider trading, and one's more about accounting measures to, you know, cook the books, to use words that are probably maybe not the right words. But anyway, so that's, I think, our question, is whether they are a single claim or not. Is that right? That's the central issue in the appeal, yes. And the way in which, and you're exactly right, the language of the policy controls, and the way in which this policy, like other policies, cabins that risk is by virtue of a very broad related claims provision that says all claims, all related claims, will be deemed a single claim, first made in the policy period in which the initial claim was made. And so you're exactly right, the focus is, okay, under those, that provision, are the government investigations here, and the class action, and the derivative, a single claim. And the policy specifies the test that you apply to determine that. Well, in fairness, the policy gives like five different tests, which relate somehow. Well, I will say, Your Honor, actually, which one applies is a red herring in this case, because it does not matter which one applies. Well, they argue, I see your point there. I endorsement land, and you're talking about legally and logically, causally and logically related. You'd say you meet that, right? Absolutely. And so, and, but they, I think their argument is something like this, that that's more narrow than common nexus of any fact. And if it's more narrow, it, it's the only one that applies. And they say that it's not logically or causally related, because one's accounting misconduct, and one is outward speaking and insider trading misconduct. Okay. In terms of the breadth of the provision, logically or causally connected, and there's a host of cases we cite, is a very, very broad standard. So is common nexus. And here, in fact. Are those different? I'd say they're overlapping and comparable. Maybe at the margin, one could argue, if you parse the language exactly, it's somehow different, but not here. Here, I was about to say, years ago, you would have policies that just say all related claims without defining related. And if that's what this policy said, these would still be clearly related. The fact that the district court, correctly and understandably, the plaintiff said, these are related cases, and the district court said, in terms of the class action, and the court said, yes, they are related, they can all be consolidated, give me a consolidated complaint. It's just, the notion that these are related is absolutely core to the concept. Tell us why. I mean, you're just giving the conclusion. Give us the reason. I'll give you the reason. The government investigations, as your honor indicated, focused on the accounting practices, the pull forwards. Now, those accounting practices are not themselves in any way unlawful. The SEC would not take action because you had pull forwards. The action by the SEC, the concern was that the failure to disclose that adequately made the public statements, the same public statements alleged in the class action and the derivative action, made those misleading. And if you want to look at, well, are the facts and what was at stake in the SEC related causally or to the allegations and misstatements, you only have to look at the SEC order itself. If you look at, and that also confirms that the SEC was not saying use of pull forwards is a violation. It was saying failure to disclose that you're using these accounting gimmicks to give misleading statements is what's improper. And so, if you look at the order, this is on the appendix 1096, paragraph 4, so it's fine to the SEC, as a result of Under Armour's failure to disclose the impact of its pull forward practice on revenue growth, Under Armour's public statements were materially misleading. So flat out causal relationship. When is that? What's the date of that order? It was in 2021. I don't have the exact date of it, but it was in 2021. Isn't that one of the issues for us when we look, it seems to me by the time the complaint's amended, ultimately the third amended complaint, maybe their argument is even when they're in the same amended complaint, they're not related. It seems like that's a tough argument to make. But do we get to look at the end of the investigation or the end of the lawsuit, or is it more what we look at when the claims are first made? You look at the entire record, and the thing about this is it's the final order, it was a consent order, but it's specifying exactly what the investigation was about, and the earlier allegations are entirely consistent. What the SEC was investigating from day one was did Under Armour use these accounting gimmicks to support misleading financial statements, misleading statements about its finances. So can I ask you about a word in the district court's opinion that sort of leapt off the page and causes some very serious concerns to me that sort of relates to some of what we're talking about? This is on J1130. It's page 22 of the district court's opinion. It's the concluding sentence of the only full paragraph on that page. As such, the court finds that the supposed common nexus of facts between these things is insufficient. These were 12C motions, right? Yes. District courts don't get to make findings when ruling on 12C motions, do they? They do not. And there's just peppered throughout the district court's opinion is language that makes me very concerned that we are not applying the judgment on the pleadings standard here. Well, both sides move for judgment. Yeah, both sides could have wrongfully thought they were entitled to judgment on the pleadings. Well, and I think if we believe we are entitled to judgment on the pleadings, there is language. I assume you would rather, however, get their judgment on the pleadings vacated and remanded, even if you don't get your judgment on the pleadings. Yes, that would be a better alternative to Under Armour. So, I mean, part of the question is, is this related to this, and is it enough? And I was like, this does not seem like a judgment on the pleadings inquiry. Well, this seems like, right, this seems like, because I've got to, because in order to grant judgment on the pleadings against you, I have to take all the factual allegations in the complaint and construe them, like, super in your favor. And to grant judgment on the pleadings for you and against them, I would have to do the opposite of that. But those are different questions. And in other words, I could easily imagine a world and say, if I review everything in the complaint and the documents attached to the complaint in favor of you, you win. And if I review everything in the complaint and the documents attached to the client in the lightest favor to them, they win. And then my answer is, basic civil procedure says, then what you do is not grant judgment on the pleadings. And almost all of these related claim decisions, and we cite a host of them, are decided either on judgment on the pleadings or... Maybe those decisions are wrong, because it violates basic rules of civil procedure to do that. I think the reason that we'd be entitled to judgment on the pleadings is the issue is, are the wrongful acts, which are the alleged... Is X related to Y, strikes me as a quintessential factual question that you cannot decide based on the face of a complaint. Well, what the question presented is... Well, I'm not sure I'm respond to that. It seems, I wonder, I mean, if the policy defines how we consider related, why is it not something that we could consider as a 12C motion? You can, and the reason why is that the policy defines what is a related claim. It establishes a standard. Are they logically or causally connected? And the facts, so to speak, the alleged wrongful acts that you're applying that standard to, are those in the complaint. And so, and you're not finding whether they're true or false or have merit or not. The issue is, are these allegations in the complaint or in the government investigation logically or causally connected? And so there's no fact to be found. It's simply applied. It's much like any other legal standard. If you take this definition of what's a related claim, and you look at the allegations of the complaint, does it qualify? And here, there's really no dispute. All the documents show, and what Under Armour has alleged, is that there are two categories, they say, of acts, wrongful, that are not logically or causally connected, not related. One is alleged false statements about finances. And the other is the use of pull-forwards and other inappropriate, well, other accounting techniques used for the purpose of supporting those false statements. If you step back for a moment and think about it, if... Let me probe that a little bit. So, I mean, I think a lot of this depends on the level of generality you use, right? I don't think you would say they're related because they both involve Under Armour. No. I don't think you would say they're related because they both involved potential securities violations. Right. I mean, you have to connect these... You would say it's not that level of generality, and they're going to say it's going to be... But it's enough if it's part of the same related scheme. Yes. They're going to say you look at the core facts. So, there is this question of at what level of generality we look at related to. Yes. And there are, as our brief indicates, a host of cases from this court and others, this circuit and others, applying a related claim provision similar to this to much, much less closely connected facts. Miller Development itself from this court. I think Kilcher from the Eighth Circuit involved an investment advisor giving advice to multiple different clients about multiple different investments. But the court said on all of them, the advisor was trying to churn. Those are related. The Belcher case from the Eleventh Circuit says you look for commonalities, not for differences under this language. Much more... And the Delaware Supreme Court case in Henri Exelon Pharmaceuticals. Again, very similar. Here, it's our fortiori because how are they connected? The way in which they're connected is it's a single scheme. It could not be more narrow. This is not like Under Armour argues about cases talking about the same motive, like increasing profits. This isn't that. This is an allegation that you made specific statements about your finances, about the 20% quarter-to-quarter growth streak you've had for 26 consecutive quarters. You made statements that were false and misleading. That's the first set. The second is you used pull-forwards and other accounting techniques to make... May I finish? You used pull-forwards and other inappropriate accounting techniques to make the books match the false statements. If you step back and think, well, if Under Armour had just made the false statements and had not played any game through its accounting, anybody could read the financial statement and say, they're not, this isn't a 26 quarter growth rate. Thank you. Mr. Sharkey. Good morning, your honors. May it please the court. My name is Michael Sharkey and I represent Under Armour in this insurance coverage appeal. As this court is aware, the key dispute in this case is whether the government investigations that Under Armour faced and the later allegations, making those same allegations, were a claim first made under the 2017 tower. And for six of the nine of the appellants, that question has already been decided by contract. They entered into a later policy that contained an endorsement that said, claims that came in that were related to the government... So just like in your brief, you're opening up your appealese argument by defending the district court judge on completely different grounds, which to me may suggest that one is not super persuaded by the district court's actual grounds of decision. No, I think... I mean, I represented a lot of appellees. I made a lot of arguments, alternative arguments for affirmance, but it was pretty rare to start my brief with an alternative grounds for affirmance. Well, I think my motivation here is six of these already settled this dispute. And why are we here for this dispute for those six? Well, the contrary to that is the district court never resolved that question. Even if we agree with you, there's still... Like that doesn't resolve... It would be one thing if that just knocks out the case. If it's like a silver bullet, you win, case done. But let's say we write an opinion that says you're right about this. We then just have to keep going and talk about the rest of the issues. We can't resolve the appeal that way. We think as to those six, it resolves the case. It gets it done. But it doesn't resolve it for us. And it doesn't resolve for the district court either. Like the case isn't just over, even if you win on that issue, right? The three of six... It's over for six of them. Over for six of them. There's $30 million still at stake, right? Yes. But on the other hand, there's $60 million that would, of course, be resolved. The response on that issue is, you know, yeah, it said that. But it also said subject to all other provisions of the policy and all other provisions of the policy of what we've been talking about before. So maybe it's not quite the silver bullet even for six of them. Well, I'll address that. But then I'll move on to the question as to the other three. The answer to that is that it says subject to all the terms and conditions after it says deemed made under the 2017 tower. So you have to read those together. Otherwise, you'd be disregarding. Deemed in law means you treat something in a certain way, whether or not it ordinarily would be treated in that way. So it says you deem it made under the 2017 tower. Then you apply the terms and conditions of that tower. So if you then allowed... Which would still at least preserve the specific claims exclusion and the prior notice exclusion, right? No, Your Honor, because they're deeming it made under the... That just means it's made. That means you got a claim. But you still could look... It could still be excluded. It could not be subject... In theory, it cannot be subject to the single claims provision. But be subject to exclusions that apply even if you have coverage. But those exclusions wouldn't apply if it's deemed made under the 2017 tower. That language would be meaningless because if every claim that would be deemed made under the 2017 tower... What's the purpose of that language that's subject to everything else? All the other terms. If it's not a securities claim, if it's not the insured. I don't mean to... Okay. So I'll move on to the separate claim issue. So even apart from that issue, the policy language and legal principles applicable here, these are not interrelated under the relevant definitions. The one involved pull forwards and... Sorry, what's the relevant definition? So in terms... To add to the theme of things I was confused about of the district court's opinion is the part where the district court just summarily declares that one of the definitions is way narrower than the other and literally doesn't explain on what basis the district court reached that conclusion. Just like you just said it. First, let me say these definitions are confusing as heck. But second of all, it is not at all obvious to me that one of these definitions is much narrower than the other. Well, Your Honor, then I'll try to explain. The one definition in the body of the policy speaks of all wrongful acts that have as a circumstance, situation, or event... This is the one you think is the broad one or the narrow one? This is the broader one. Okay, thank you. And as we pointed out in our brief, the switch to the two different endorsements where they narrowed it twice, the one in the specific matter exclusion and the other in the endorsement for, it changes that to the fact or circumstance. And Maryland law, there's case law that says the... How do I know it changes it? How do you know it changes it? Oh, yes. It doesn't purport... I'm looking at it right now. It doesn't purport on its face to change something. The answer to that is endorsements control over the body of the policy. If they're conflicting. If they're conflicting and they use the though, which is Maryland is held as a narrower term. Well, but how do I know this is Maryland? One of the disputes in the... This is this... I'm sorry. I think I have this right. Is this a... No, this is not the case where we're fighting whether this is Maryland. Sorry, we have a later case where parties are fighting which law applies. But we all agree this one's Maryland. This one's Maryland. That's my guy. And so, you know, there's a Maryland case we cite where it says forum selection, the location of the party. And it was a credit union that had locations in every county. But you're talking... I'm sorry. Go ahead, Judge Barnes. So I'm looking at the endorsement section and several paragraphs say this section is replaced with the following. And on the single claims provision, it says is amended by the addition of the following. And that... So over and over, the endorsement section repeats is replaced with. But I believe the section you're pointing to says is amended by the addition of the following. So don't we need to read it as adding to rather than substituting out? Well, Your Honor, the fact is the rules... If the endorsement conflicts with the main policy, the endorsement controls. So how do we read the distinction between paragraph after paragraph which say is replaced with and the paragraph you're pointing to which specifically says is amended by the addition of the following? I think we follow that that difference has to have a significance. And to me, the significance is this section is amended and the other is replaced. Your Honor, by putting in a narrower definition, remember they did it twice because they also did in the specific matter exclusion. The rule isn't it has to say it replaces it. It has to say rule and this is Prince George's County versus local government. Counsel, before you get... I'm aware of case law that says if you have narrower endorsements, it will control over the body. But there's a number of steps to get there. One is you try to read them together. You start in deciding whether they're inconsistent, you try to read them together. When you have language like Judge Berner talks about that says is amended by the addition, I mean that's a clue. And maybe you can overcome those two things by showing something is blatantly inconsistent or maybe just inconsistent. But at some point you got to explain to us, you got to overcome some hurdles and then you got to convince us that logically and causally related is like obviously more narrow than any common nexus of any fact. And I still haven't heard that. Okay. Your Honor, well, the reason if it is narrower, it's like a Venn diagram that's a donut where a narrower definition... Why is it narrower? Because it says the claim, the facts and circumstances. It doesn't say any. It says the facts and circumstances.  The endorsement on the single claim provision? Endorsement for on the single claim provision. Instead of saying any fact or circumstance, it's the fact or circumstance. I thought the was in the endorsement of the specific matter. It is as well. They twice changed the language in the body of the policy of any to the. Shows an intent that that's what they really meant. What's the JA site where... 491. Okay. So it actually says the JA 491, two things. It says all claims and inquiries that arise out of the same facts, you're correct. But then it also says or facts, circumstances, situations, events, or wrongful acts that are previously defined that are logically or causally related. So it both says the and or facts generally without the the that you find so significant. Well, again, they're not using the word any. So that's a significant removal from the body of the policy. And the causally and logically connected language that's been interpreted by courts to mean connected by an inevitable or predictable interrelation or sequence of events or one person or thing brings about the other in a direct and traceable way where no independent significant thing interrupts the causal chain between the two. And you just don't have that here. So even taking that part of the definition, what you've got is one set of conduct, which is the pull forwards and accounting issues, and then the public statements. They weren't inevitable. I'm sorry, Your Honor. No, go ahead. One didn't cause the other. They were two separate pieces of conduct that were being done. And again, given again, we're talking about the level of generality here. And because it's talking about the facts, not any facts, that needs to be a high level of generality. The main facts, just as the county where the bank is located is the main location, not any branch location, has to be the main facts. That's what was. Why is it? I mean, and you're right. The level of generality matters. If the facts, the circumstances, I think I got that right. Judge Berner was just repeating, was just stating it. The facts, the circumstances, the situations, the events is the scheme to ensure that the public, investors, whoever are going to believe the 20 plus percent growth will continue. If that's the level of generality, you know, maybe you lose. But you're saying we can't, that's too broad? Even under the any language. The Purdue case in the district. The Purdue case doesn't really help. The Ascend One case. Purdue case said a similar modus operandi isn't enough. In Ascend, it was, you know, similar abusive credit counseling. And it was how that wasn't enough. And clearly the motive there in each was the same. They were trying to manipulate the chicken market. And versus they were trying to use abusive credit counseling to get money. The motive is the same. All DNO claims that are, many of them relate to securities class action. The allegations are always you were trying to keep your stock price up. If that were the level of generality that were appropriate, even under the standard any language, all claims would be related. So there would be no. Here it's not you're trying to keep your stock prices up. Here it's you're trying to keep your stock prices up through a specific scheme that is alleged to contain specific allegations that are common to the SEC actions and the investigation. But it was different conduct. Maybe it was directed at the same goal, but it was. From the different aspects that you're saying are different claims, what conduct was different specifically? The one was, it was the pull forwards and the accounting treatment. And the other was the alleged misleading statements to the public. And weren't the alleged misleading statements to the public based on the pull forwards and the accounting? They were broader. They were talking about the demand, the revenue growth. They weren't specifically talking about the pull forwards there. Did it include the pull forwards and the accounting malfeasance or tricks? There weren't statements about pull forwards in those public statements. And remember, Judge Bennett. But there were statements about growth, and the way they could make those statements and be arguably, you know, as accurate as possible, if that's right, is because they pulled the revenues forward. The statements themselves, they were things like, oh, demand is going down because it was a warm winter. Oh, this kind of U.S. demand versus foreign demand statements. So let me imagine that I used to do, I know you probably never have these sort of policies in a products liability world. But if you were a tire manufacturer and you decided to make tires with thinner treads because you wanted to save money, and then you made up a reason in your tire development files that it was because of environmental reasons or something like that, would you say those are separate, unrelated? They're not causally and logically related? Your Honor, all I can say is there is case law, and we cite it in the brief, a common scheme, similar conduct, a similar modus operandi isn't enough. And here What's the, I agree that you like, you know all the cases better than I do, but the one I remember is Purdue, which talks about different ways of manipulating the chicken market. But is there, it seems to me this is an event that from a time standpoint is going all towards the same projections of growth. So it's not what you got, it's not the level of generality that we're trying to manipulate stock, we're doing two things to manipulate stock prices. We're doing two related things that deal with a specific economic conditions at one point in time. And what's the closest, let me just say it this way. What's the closest factually case you believe helps you to this scenario? I think maybe Spectrum versus Home. That was a case, it's from the federal court in New York, another securities class action that like this one grew by accretion. There were alleged misstatements about licenses, that was held to be separate from misstatements about whether the CEO was going to stay with the company, misstatements about some other issues, and all of them were in general to keep the stock prices up that the company wasn't, you know, was doing better than it was. But the court in Spectrum said these are separate. It went through and dug in and said well this is related to this, this is related to that, two separate claims, two separate towers. That's the most similar because it's a similar securities class action that grew by accretion. Which actually brings up another point I would like to touch on, that even when these claims were added together in the same class action, like in Spectrum, they still remain separate claims. And remember Judge Bennett, we don't always have this. The same judge who was dealing with the underlying case dealt with the insurance case. So he was pretty familiar. And there's talk about how they were put together. Pretty familiar enough to be looking outside the face of the pleadings, which one can't do at a 12C? I think he tied each of his, what he was saying to the pleadings. If you look at his decision, he refers to what was in the pleadings. But you're just saying we should give special deference to the fact that he knows a whole bunch of stuff that's not in the complaint. Well, what I'm saying is I think, you know, he has a perspective on the complaint. And if you look at the one decision. A perspective other than construing it in the light most favorable to the non-moving party, which is the relevant perspective on the complaint? Well, in the liability case, for example, he ruled when he was putting, made the decision that ultimately led to being consolidated with the new class actions that came out after the government investigations were publicly revealed and allowing them to, the existing plaintiffs to amend, what he said was these, he said, you know, Under Armour said, well, he addressed, Under Armour was opposing that. And he said, no, I'm going to let these allegations in because they're not merely cumulative of the allegations that are already in the action. And this was in his, this was when he was adding these to the, in the underlying case. And then he similarly said, this information is nowhere found in the second amended complaint because the investigation had not been revealed to the public. And that echoes in the, you know, it's an 1130 in the record, his decision here, where he said certain allegations of sales and accounting practices were, quote, wholly absent from the briefs complaint and the early derivative demands. So he was taking the pleadings in the one and saying, okay, that, that wasn't there before. And then he relied on, again, case law. You don't need to even look at spectrum. Beal in the Maryland Court of Appeals said you can have one litigation with multiple claims for insurance purposes. There it was a malpractice case with multiple siblings who mishandled the, the lawyer mishandled the lead paint case for all of them. And he said, well, you have separate duties. Therefore, you, these are separate claims even though it's the same action under a similar definition of claims we have here. And as Judge Bennett held, the language backs that up here because you have, it says a civil action for a wrongful act. A written demand for monetary relief for a wrongful act. Civil investigation for a wrongful act. If they're different wrongful acts, oh, and also separated by or. If they're different wrongful acts, they're all different requests for monetary relief for different wrongful acts. So the mere fact that they were put together under the policy language, under Maryland law, and under factually similar cases like spectrum, and we cite some other examples in our brief, you can have a single litigation that involves separate claims. And here especially where they were preceded separately for years. You had the securities class action going on. You had the SEC investigation going on separately for years. Securities class action wasn't talking about the full forward. Then when it got revealed publicly, they added it in. But again, it wasn't held to be cumulative. And you consolidate based on judicial economy and other considerations like that. It doesn't necessarily mean they were the same claim. And the judge looked at the pleadings, looked at the record that, you know, the parties put in for, on the standard, and held that these were not related claims. And we submit that it should be affirmed and remanded to the trial court. Mr. Barnett. Thank you, Your Honor. Appreciate it. Thank you. The logically or causally connected standard in the endorsement is not narrower. One could argue it's broader. It has logical or causal. And the use of the, it's exactly as Your Honor's question suggested, the cases they rely on are situations like a provision that says the principal place of business and nothing else. This goes on and it says, or facts, circumstances, situation, events, or wrongful acts that are logically or causally related shall be deemed one claim. So it doesn't just say the. It says logically or causally connected. The way they're connected here is manifest. And in fact, one good example of that is that initially the district court dismissed the securities class actions, saying you haven't adequately, you identified false statements, allegedly false statements, but you haven't adequately pled scienter. Later when it became known that the government investigations became known and there were the allegations about the accounting practices, bad accounting practices being used to support those public statements, the court granted that motion for indicative relief, rule 60B. And so okay, well now the court said that's additional evidence to support scienter. And if you look at the consolidated amended complaint, that's exactly what it says. This is on page JA178. These suspect sales practices, which includes the pull forwards and other accounting gimmicks, enabled the company to increase quarterly revenue. So the accounting enabled increasing the revenue. What's your, your colleague talked about the later policy that said that if there's something related to these claims, they'll be deemed made in 2017-18. I'm getting it wrong. No, no, and you're exactly right. And I think it does speak volumes that both the oral argument. Forget what it speaks to. Yes, I will. That provision on its face was intended to preserve the status quo. At the time those later policies. I'm not that worried about intent. I'm worried about what it says. All right, what it says is that new claims, not existing ones, made in the 1921 period will be deemed made during the 17-18. Subject to all terms and conditions of 17-18. So for starters, and as an initial matter, that 17-18 policy says it can only be amended by endorsement, which didn't happen. But take as a given that those claims are deemed made. It's subject to all terms and conditions. 17-18 policy says claims have to be first made. And nothing about that special investigation provision. So your position there is that it's made between, you know, 2017 and subsequent years policies. But you still got to apply the first, I forget the names of these. The single claim provision. Yes, your honor. The claim is made during the 17-18 policy. I think your colleague says if that's the case, you're really not doing anything. What's it doing? You say it's preserving the status quo, or that was the intent. What effect is it having at all if under your reading? Because then it would be treated as, if it gives a full effect, it's treated as made during that policy period. Subject to all other terms and conditions. So that includes, and the endurance, the primary carrier had reserved rights on whether the government investigations were first made. And so that's still in play. And beyond that, all terms and conditions also includes the exclusions in the policy. My question wasn't clear. Assuming you're right, I think your colleague will say that provision, that language in that year doesn't do anything. It doesn't preserve anything. It's like meaningless. You had all that before. So what's the legal effect of it than just, you know, you didn't have to have an amendment to say that. That was your position all along. So what's the amendment do? Well, what it does, I'm sorry. No, go ahead. Under the 1921 policy, if you had a new claim made during that period, what that's saying is, okay, that's going to be treated as a claim made in 17-18, subject to all terms and conditions. So then what it does is say that new claim, and these aren't new claims, but that new claim will be subject to whatever 17-18 provides. It rises or falls with the others. And so then you will- And is that partly to cap the liability under the new policy? Is that why it's related back? Is it in order to cap liability under the new policy? Yeah. The specific investigation exclusion is belts and suspenders to be sure that none of this known circumstance is going to fall in anything other than, it's going to fall in that later policy. It's the whole point about claims made coverage is intended for- So then if you, for example, for 17-18 had already spent half the coverage amounts, you wouldn't get a whole new $100 million to play with? Well, yes. And in fact, the whole point here is that Under Armour got $100 million of coverage under 16-17. And the notion is to make sure that nothing, these existing known circumstances don't get coverage under the later policy. And on this special investigation endorsement, if it comes back, even if you don't apply this provision about first made versus made, the single claim provision, you still have the exclusion for specific matter exclusion. And there's nothing, any reasonable argument, I think, that the other terms and conditions of the 17-18 policy include that specific matter exclusion. Thank you, Counselor. Okay. Thank you, Counsel. We're going to come down and greet Counsel. And we're taking this matter under advisement. We'll come down and greet Counsel. And then we'll take a break and come back and deal with our final two cases. This Honorable Court will take a brief recess.
judges: A. Marvin Quattlebaum Jr., Toby J. Heytens, Nicole G. Berner